[Crim. No. 32961. Second Dist., Div. Two. Nov. 21, 1978.]

In re JESUS QUIROZ MARTINEZ on Habeas Corpus.

## COUNSEL

Wilbur F. Littlefield, Public Defender, Dennis A. Fischer, Howard C. Waco and Stephen F. Moeller, Deputy Public Defenders, for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, James H. Kline, William R. Pounders and Sharlene A. Honnaker, Deputy Attorneys General, for Respondent.

## OPINION

**COMPTON, J.**—In this habeas corpus proceeding defendant seeks to be freed from a condition of probation imposed on him as a result of his plea of guilty to the crime of battery on a police officer. (Pen. Code, §§ 242, 243.)

Defendant was originally charged with a felony offense of assault by means of force likely to produce great bodily injury on a police officer. (Pen. Code, § 245, subd. (b).) With the consent of the district attorney he was permitted to plead guilty to the lesser charge. Defendant was sentenced as a misdemeanant.

In granting probation to the defendant the trial court imposed, and the defendant accepted, inter alia, the following conditions:

(1) That defendant not possess any dangerous or deadly weapon, and

(2) That defendant submit to warrantless searches of his person or property by law enforcement officers. It is this "search" condition which defendant challenges here.

The circumstances of the underlying offense of which defendant was convicted were as follows:

On November 25, 1976, two uniformed police officers were attempting to impound an illegally parked vehicle. A crowd of approximately 50 young males and females began to form, yelling obscenities and throwing beer cans and bottles. The officers called for additional police, who arrived to assist them. As the police prepared to leave the location, one of the officers observed the defendant throw a beer bottle at the police vehicle. The bottle broke against the patrol car, shattering glass and spewing beer over the officer.

Defendant argues that the condition that he submit to future warrantless searches is invalid in that it is unrelated to the charge of which he was convicted and is therefore outside the scope of the rehabilitative goal of Penal Code section 1203.1.[1]

---

[1]Penal Code section 1203.1 provides in part: "The court or judge thereof, in the order granting probation, may suspend the imposing, or the execution of the sentence and may direct that such suspension may continue for such period of time not exceeding the maximum possible term of such sentence, except as hereinafter set forth, and upon such terms and conditions as it shall determine. . . . [¶] The court may impose and require . . . reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from such breach and generally and specifically for the reformation and rehabilitation of the probationer, that should the probationer violate any of the terms or conditions imposed by the court in the instant matter, it shall have authority to modify and change any and all such terms and conditions and to reimprison the probationer in the county jail within the limitations of the penalty of the public offense involved."

In granting probation, courts have broad discretion to impose restrictive conditions to foster rehabilitation and to protect society. (*In Re Bushman,* 1 Cal.3d 767 [83 Cal.Rptr. 375, 463 P.2d 727].) Requiring the probationer to submit to warrantless searches has been held to be proper and reasonable under certain circumstances on the theory that probation is a privilege and the person granted such privilege after conviction of a crime does not enjoy the full constitutional protection of persons otherwise situated. (*People* v. *Mason,* 5 Cal.3d 759 [97 Cal.Rptr. 302, 448 P.2d 630].)

Of course the condition concerning warrantless searches, like any other condition, may be challenged as being unreasonable or excessively harsh under the particular circumstances. (*In re Osslo,* 51 Cal.2d 371 [334 P.2d 1]; *People* v. *Frank,* 94 Cal.App.2d 740 [211 P.2d 350]; *In re Bushman, supra.*)

The test for determining whether a particular condition of probation is invalid and an abuse of the trial court's discretion was enunciated in *People* v. *Dominguez,* 256 Cal.App.2d 623 [64 Cal.Rptr. 290], and approved by the Supreme Court in *In re Bashman, supra,* and *In re Mason, supra.*

The most recent expression of the law on the subject is *People* v. *Lent,* 15 Cal.3d 481 [124 Cal.Rptr. 905, 541 P.2d 545]. It was there stated at page 486: "A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, *and* (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' (*People* v. *Dominguez* (1967) 256 Cal.App.2d 623, 627." (Italics added.)

In footnote 1, at page 486, the court expressly disapproved the use of the disjunctive in *In re Bushman, supra,* and *People* v. *Mason, supra,* 5 Cal.3d 759, and stressed the conjunctive nature of the test.

The Attorney General defends the "search" condition on the grounds that the *condition prohibiting possession of dangerous or deadly weapons by defendant is related to the present offense*—assaultive conduct by the defendant—is related to future criminality by deterring the possible use of weapons in a future assault *and that the latter "search" condition* is necessary to permit effective enforcement of the former condition.

In other words, the Attorney General's argument is that whenever a condition prohibiting possession of concealable weapons can be reasonably imposed, a "search" condition may also reasonably be imposed. This argument, then, requires a preliminary discussion of the condition prohibiting possession of dangerous and deadly weapons, even though in these proceedings defendant has not challenged that condition.

The Deadly Weapons Control Law (Pen. Code, §§ 12000, et seq.) prohibits possession of certain described weapons by anyone (Pen. Code, § 12020) and also prohibits possession of firearms by certain classes of persons or under certain conditions (Pen. Code, §§ 12021, 12021.5, 12025). This leaves situations outside the ambit of the Deadly Weapons Control Law in which mere possession of deadly or dangerous weapons is legal. (Pen. Code, §§ 12026, 12027.)

A condition of probation which prohibits possession of all weapons under any circumstances restricts what would otherwise be lawful conduct. A condition simply prohibiting violation of the Deadly Weapons Control Law would be a redundancy.

Here defendant was charged with an assault by means of force likely to produce great bodily injury. This type of assault can be committed by the use of common articles whose generic nature, under normal conditions, is not dangerous and whose possession would not be unlawful. In fact, the missile which defendant used in this case was not by definition either a dangerous or deadly weapon.

Facially the prohibition against defendant's future possession of dangerous or deadly weapons is not related to the crime for which he was convicted unless it can be said that in all cases of assault by any means such a prohibition is reasonable. We think that is not the case.

We are not prepared to declare, however, that in all cases where a defendant is convicted of an assault not involving the use of dangerous or deadly weapons, imposition of such a condition would per se be unreasonable. As we will indicate, *infra,* the propensities of the individual defendant as manifested by the present offense and *past behavior,* may justify such a condition in order to deter future criminality.

Given the inordinately large role which weapons play in the high incidence of violent crime that our society is experiencing, it could be argued that imposing such a condition on anyone who suffers a criminal

conviction for any offense would go a long way in preventing future crimes. Such an approach, however, would be unreasonable and would result in denying to a large group of nonviolent persons the right to own or possess weapons for any reason.

Further, if, as the Attorney General contends, the imposition of such a condition necessarily carries with it the additional condition that the probationer be subjected to warrantless searches, the approach becomes even more onerous and unreasonable. There would then be created a large class of persons stripped of their protection against unreasonable searches and seizures in the name of speculative crime prevention.

We are not unmindful of the great value to effective law enforcement which this probationary device provides in the classic cases, such as narcotic offenses and offenses involving concealable weapons, where such a probationary condition is proper and truly serves the goals of rehabilitation and protection of society. (*People* v. *Mason, supra,* 5 Cal.3d 759.) Prosecutors, however, would be well advised to be judicious in seeking imposition of this condition lest overuse lead to its total elimination.

This rather lengthy preamble to our discussion of the contentions in this case is prompted by our reluctance to impinge on the trial court's discretion in structuring its probationary orders. The facts of this particular case however are unique. After careful consideration we are persuaded that the condition subjecting this defendant to future warrantless searches must be stricken from the probationary order.

Defendant is described by the probation officer as having received an honorable discharge from the Marine Corps, married with three children and regularly employed. His prior criminal record consists of one arrest which did not result in conviction. The probation officer further describes defendant's involvement in the present offense as "an isolated situation."

As previously noted, the present offense did not involve a concealed weapon. Thus it appears that the condition that he submit to future searches is unrelated to the present offense—the first "prong" of the *Lent* test.

In *People* v. *Kay,* 36 Cal.App.3d 759 [111 Cal.Rptr. 894, 73 A.L.R.3d 1235], defendant was convicted of assaulting a police officer with sticks, broom handles and similar objects. The court there stated at page 762:

"These objects were tools of the particular affray, openly displayed. Lack of search had nothing to do with the offenses—the officers saw the objects all too plainly."

Defendant's right to otherwise refuse to submit to future warrantless and unreasonable searches is, of course, lawful conduct—the second "prong" of the *Lent* test.

This then brings us to the crucial issue—the third "prong" of the *Lent* test—is the condition reasonably related to future criminality?

As we noted earlier, indiscriminate searching of all persons for weapons could abstractly be related to preventing future crime. The test, however, is more precise. There must be a factual "nexus" between the crime, defendant's manifested propensities, and the probation condition. (*People* v. *Dominguez, supra, In re Bushman, supra; People* v. *Mason, supra; People* v. *Lent, supra.*) There must be some rational factual basis for projecting the possibility that defendant may commit a particular type of crime in the future, in order for such projection to serve as a basis for a particular condition of probation.

In *People* v. *Keller,* 76 Cal.App.3d 827 [143 Cal.Rptr. 184], the Court of Appeal for the Fourth District, placed a "gloss" on the three-pronged *Lent* test by adding an overall requirement of reasonableness in relation to the seriousness of the offense for which defendant was convicted.

There the defendant was convicted of stealing a 49-cent ballpoint pen. On the assumption that defendant's shoplifting propensities were rooted in a narcotic problem, the court imposed the "search" condition in granting him probation. The Court of Appeal, while basing its decision essentially on a failure of the condition to meet the *Lent* test, suggested that the condition was in any event unreasonable in a case of such minor importance. We are of the opinion that the *Keller* court's approach was sound and we approve.

In the case before us, defendant's conduct was, of course, more serious than Keller's. Both the court and the prosecutor, however, assessed the offense as being of only misdemeanor gravity. Further, nothing in the defendant's past history or in the circumstances of the offense indicate a propensity on the part of the defendant to resort to the use of concealed weapons in the future. To suggest that he might is a venture in speculation that could be applied to almost anyone.

Before a defendant, under the compulsion of threatened incarceration, can be asked to surrender his fundamental constitutional rights for the future, the entire circumstances of his background and the crime for which he was convicted, must be carefully scrutinized. (*People* v. *Keller, supra.*)

Applying the criteria of the cases and our own careful scrutiny of the circumstances of this case we are led to conclude that the "search" condition here is simply unreasonable and unauthorized by the provisions of Penal Code section 1203.1.

The petition is granted for the limited purpose of striking from the probationary order the condition that defendant submit to future searches.

Roth, P. J., and Fleming, J., concurred.