Filed 8/28/23  P. v. Aguilar CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B316432 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA093196) |
| v. | |
| ANDREW DEAN AGUILAR, JR., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Hayden A. Zacky, Judge.  Affirmed.

Maura F. Thorpe, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

At the conclusion of a court trial, defendant Andrew Aguilar was convicted of one count of assault with a deadly weapon. The trial court also found true a special allegation that Aguilar personally inflicted great bodily injury on the victim. The court sentenced Aguilar to an aggregate prison term of seven years, which consists of the four-year upper term for the assault conviction and a three-year enhancement for the great bodily injury finding.

On appeal, Aguilar argues that amendments to the determinate sentencing law requiring proof beyond a reasonable doubt of aggravating factors apply retroactively to his sentence, and that his sentence violates the revised law because the trial court did not find beyond a reasonable doubt the facts giving rise to two aggravating factors he asserts the trial court used to justify imposition of the four-year upper term.

Aguilar further maintains this error was not harmless. Aguilar claims had he been aware of the revised law's new procedures, he would have developed the record to establish a reasonable doubt as to one of the two aggravating circumstances, that is, whether the assault was unprovoked. He further claims we should remand for a new sentencing hearing because the record does not clearly indicate that the trial court would have imposed the upper term based only on the other aggravating factor—that the victim's injuries were substantial, permanent, and ongoing, especially given the court's finding that Aguilar's minimal prior criminal history was a mitigating factor.

We agree with Aguilar that the new amendments to the determinate sentencing law apply to this case. We, however, conclude that the trial court's noncompliance with the revised law was harmless.

Reviewing the trial court's statements at the sentencing hearing, we conclude the court's decision to impose the upper term rested on only one aggravating factor—the nature and extent of the victim's injuries—and that the court made a remark concerning lack of provocation merely to explain why certain mitigating factors were inapplicable.  Put differently, the record shows that the trial court relied only on one aggravating factor, the substantial, permanent, and ongoing injuries suffered by the victim.   We also conclude the court would have found that the victim's injuries were substantial, permanent, and ongoing beyond a reasonable doubt.

 In sum, we conclude the trial court would have imposed the upper term even had the revised statute been in effect at the time of Aguilar's sentencing.  Accordingly, we affirm.

## PROCEDURAL BACKGROUND[1]

On December 4, 2019, the People filed an information charging Aguilar with one count of attempted murder, in

---

[1] Our description of the trial court proceedings and of the evidence presented below is derived in part from admissions made by the parties in their appellate briefing.  (See *Williams v. Superior Court* (1964) 226 Cal.App.2d 666, 668, 674 [criminal case in which the Court of Appeal stated:  " 'An express concession or assertion in a brief is frequently treated as an *admission* of a legal or factual point, controlling in the disposition of the case.' "]; *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 [" '[B]riefs and argument . . . are reliable indications of a party's position on the facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party.' "].)  We summarize only those facts pertinent to our disposition of this appeal.

violation of Penal Code² section 664 and section 187, subdivision (a) (count 1); and one count of assault with a deadly weapon, in violation of section 245, subdivision (a)(1) (count 2). The People alleged that in attempting to murder the victim, Aguilar personally used a deadly and dangerous weapon within the meaning of section 12022, subdivision (b)(1). With regard to both counts, the People averred Aguilar "personally inflicted great bodily injury upon" the victim within the meaning of section 12022.7, subdivision (a). Aguilar pleaded not guilty to both counts and denied all allegations and enhancements.

Aguilar waived a jury trial and was tried in October 2021. Although the trial court acquitted Aguilar of the attempted murder charge, it found Aguilar guilty of assault with a deadly weapon. In connection with the assault conviction, the court also found true the special allegation in section 12022.7, subdivision (a) that Aguilar personally inflicted great bodily injury on the victim.

On November 4, 2021, the trial court sentenced Aguilar to an aggregate prison term of seven years, comprised of the upper term of four years for the assault conviction and a consecutive three-year term pursuant to section 12022.7, subdivision (a). On November 16, 2021, Aguilar timely appealed the judgment.

## FACTUAL BACKGROUND

Aguilar resided with his father and grandfather in a home two houses away from J.A. and his family.

On July 30, 2019, J.A.'s family had a barbeque and pool party at his house. J.A.'s nephew, A.A., arrived at the party at

---

² Undesignated statutory citations are to the Penal Code.

4

around 5:30 or 6:00 p.m.  At around 8:30 p.m., A.A. was ready to leave the party.  A.A. and J.A. walked out to A.A.'s truck, which was parked in the driveway.

As A.A. and J.A. were standing near the driver's side of A.A.'s truck, Aguilar approached and asked A.A. either: (1) "Bitch, you called me a bitch?"; or (2) "Who's a bitch?"  Aguilar then punched A.A. on his left cheek.  The two men began to fight, with each throwing punches at the other.

At one point, A.A. gained an advantage by positioning himself on top of Aguilar while holding Aguilar down with A.A.'s left arm.  A.A. asked Aguilar, "What's your problem?"  A.A. and Aguilar yelled and cursed at each other.  A.A. asked Aguilar, "Have you had enough?"  A.A., while still on top of Aguilar and restraining him, turned to tell J.A. to call the police.

Aguilar then slashed at A.A. with a knife.  A.A. was cut in his abdomen, on his forearm, and on his bicep.  At trial, A.A. provided testimony indicating that after Aguilar stabbed him, A.A. saw his "[g]uts come out" and A.A. noticed that certain arteries had been "[c]ut."  A.A. further testified that upon receiving medical treatment, A.A. learned that Aguilar had cut the nerves and tendons in A.A.'s right arm.  A.A. testified that at the time of trial, he continued to have difficulty moving certain fingers and "still ha[d] a lot of nerve pain."  The parties agree that because A.A.'s "injuries were very serious," A.A. "requir[ed] surgery and some long term rehabilitation."

A.A. testified that he was taken to the hospital in an ambulance that evening.  Aguilar was also taken to the hospital.

## DISCUSSION

Section 245, subdivision (a)(1) provides in pertinent part: "Any person who commits an assault upon the person of another

5

with a deadly weapon or instrument other than a firearm shall be punished by imprisonment in the state prison for two, three, or four years . . . ."  (§ 245, subd. (a)(1).)

When the trial court sentenced Aguilar on November 4, 2021, section 1170, subdivision (b) provided in relevant part:  "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court. . . .  The court shall select the term which, in the court's discretion, best serves the interests of justice.  The court shall set forth on the record the reasons for imposing the term selected and the court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law."  (Stats. 2020, ch. 29, § 14; *id.* at § 44 [indicating the statute took "effect immediately," i.e., on Aug. 6, 2020].)

Several weeks before the sentencing hearing, the Legislature enacted Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill No. 567), which amended section 1170 effective January 1, 2022.  (See Stats. 2021, ch. 731, § 1.3 [filed with the Sec'y of State on Oct. 8, 2021]; Cal. Const., art. IV, § 8, subd. (c)(2) [providing that this version of § 1170 became effective on Jan. 1, 2022].)  As amended by Senate Bill No. 567, section 1170, subdivision (b) provides in relevant part that "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms," "[t]he court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a

6

reasonable doubt at trial by the jury or by the judge in a court trial." (See Stats. 2021, ch. 731, § 1.3 [§ 1170, subds. (b)(1) & (b)(2)].)

On appeal, Aguilar argues that Senate Bill No. 567's amendments to section 1170, subdivision (b) apply retroactively to this case. Aguilar further contends his upper-term prison sentence of four years for the assault conviction does not comply with newly-amended section 1170, subdivision (b). Specifically, he asserts the two circumstances in aggravation the trial court relied upon in imposing the upper term "were neither found true beyond a reasonable doubt nor admitted by [Aguilar.]" Aguilar maintains this "sentencing error was not harmless because a factfinder would not have found true beyond a reasonable doubt both circumstances in aggravation and the record does not clearly indicate that the trial court would have exceeded the presumptive [middle] term had it known of its restricted discretion" under Senate Bill No. 567. (Boldface & capitalization omitted.) Aguilar asserts his "sentence must be vacated" and the matter should be "remanded [to the trial court] for resentencing."

Although we agree with Aguilar that Senate Bill No. 567 applies retroactively to his sentence, we reject Aguilar's contention that the trial court imposed the upper term based upon *two* aggravating circumstances. Rather, we conclude the court's decision actually rested on only one aggravating circumstance, that is, the substantial, permanent, and ongoing nature of A.A.'s injuries. We further conclude that had the trial court been aware of newly-amended section 1170, subdivision (b)'s requirements, it would have found that aggravating factor true beyond a reasonable doubt. Because the

7

trial court's noncompliance with Senate Bill No. 567 was harmless, we affirm.

## A. Senate Bill No. 567 Applies Retroactively to This Case

Before Senate Bill No. 567 went into effect, section 1170, subdivision (b) provided that if a "statute specifies three possible terms" of imprisonment, "the choice of the appropriate term . . . rest[ed] within the sound discretion of the court . . . ." (See Stats. 2020, ch. 29, § 14.) At that time, a trial court could " ' "utilize" ' " a " ' "circumstance" ' " to " ' "support its sentencing choice" ' " so long as the existence of that factor was " ' "established by a preponderance of the evidence. [Citations.]" [Citation.] . . . [Citation.]' [Citation.]" (See *People v. Hicks* (2017) 17 Cal.App.5th 496, 512 (*Hicks*).)

As amended by Senate Bill No. 567, section 1170, subdivision (b) permits a trial court to impose the upper term sentence "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term . . . ." (See Stats. 2021, ch. 731, § 1.3 [§ 1170, subd. (b)(2)].) The aggravating circumstances justifying imposition of the upper term are now subject to the heightened "beyond a reasonable doubt" burden of proof rather than the preponderance of the evidence standard. (See *ibid.*) This stringent burden of proof is not applicable, however, if "the facts underlying those circumstances have been stipulated to by the defendant . . . ." (See *ibid.*)

Aguilar claims Senate Bill No. 567's new sentencing procedures apply retroactively to his case.

Our Supreme Court has held that " '(i) in the absence of a contrary indication of legislative intent, (ii) legislation that

8

ameliorates punishment (iii) applies to all cases that are not yet final as of the legislation's effective date.' [Citation.]" (See *People v. Tran* (2022) 13 Cal.5th 1169, 1206–1207.) The Attorney General concedes that Senate Bill No. 567 ameliorates punishment and that there is no indication the Legislature intended for these amendments to operate prospectively only. We agree with the Attorney General. (See *People v. Flores* (2022) 73 Cal.App.5th 1032, 1038–1039 [agreeing with the Attorney General that "the amended version of section 1170, subdivision (b) that became effective on January 1, 2022, applies retroactively . . . as an ameliorative change in the law applicable to all nonfinal convictions on appeal"].) Because Aguilar's judgment is not yet final, Senate Bill No. 567's amendments to section 1170, subdivision (b) apply here. (See *People v. Lopez* (2019) 42 Cal.App.5th 337, 341–342 [indicating that a judgment in a criminal case is not final until the defendant has "exhaust[ed] his appeal rights"].)

B.   **Aguilar's Claim of Error Rests on His Assertion That the Trial Court Imposed the Upper Term of Four Years for the Assault Conviction Based on *Two* Aggravating Factors**

Aguilar claims that "[a]t sentencing, the trial court stated as the basis for imposing the upper term that the altercation was unprovoked and that [A.A.'s] injuries were substantial, permanent, and ongoing." He maintains that "[b]ecause these circumstances in aggravation were neither found true beyond a reasonable doubt nor admitted by [Aguilar], [his] sentence does not comply with . . . amended Penal Code section 1170, subdivision (b) which constitutes error."

9

Aguilar argues we should employ the standard announced by the Fourth Appellate District, Division Two in *People v. Lewis* (2023) 88 Cal.App.5th 1125 (*Lewis*),[3] to determine whether this error was harmless.

*Lewis* framed the harmless error inquiry as follows: "[T]here are two questions the reviewing court must ask to determine whether remanding for resentencing under amended section 1170, subdivision (b) is appropriate. First, we must ask whether a defendant *could* still lawfully be sentenced to an upper term under federal and state law. This requires us to conclude that the [factfinder] would have found at least one aggravating circumstance true beyond a reasonable doubt.[4] [Citations.] If the answer to that question is no, then the sentence is invalid and must be vacated, and the matter remanded for resentencing. [Citations.] But if the answer to that question is yes, we ask whether the trial court *would* impose the same sentence in its informed discretion under amended section 1170, subdivision (b). To answer that question, we . . . ask whether the record *clearly*

---

[3] Our Supreme Court recently granted a petition for review. (*Lewis, supra,* 88 Cal.App.5th 1125, review granted May 17, 2023, S279147.)

[4] Although the *Lewis* court stated that at the first step, an appellate court must determine whether "*the jury* would have found at least one aggravating circumstance true beyond a reasonable doubt" (see *Lewis, supra,* 88 Cal.App.5th at p. 1137, review granted, italics added), there is no dispute that the trial court was the factfinder in this case. (See also Stats. 2021, ch. 731, § 1.3 [newly amended § 1170, subd. (b)(2) provides that the aggravating circumstances may be "found true beyond a reasonable doubt at trial by the jury *or by the judge in a court trial,*" italics added].)

*indicates* that the trial court would have imposed the same sentence under the new law." (See *Lewis*, *supra*, 88 Cal.App.5th at pp. 1137–1138, review granted.)

Aguilar contends the trial court's finding that the altercation was unprovoked does not satisfy the first step of *Lewis*'s harmless error test. He argues if he had known that Senate Bill No. 567's procedures applied to his case, "[d]efense counsel would have [had] a reason to develop . . . evidence" showing that J.A. and A.A. had taunted Aguilar at some point prior to the altercation.[5] He also argues, "It cannot be said that on this record, [the trial court would have] found true beyond a reasonable doubt that the altercation was unprovoked." Aguilar further contends that because one of the "circumstances in aggravation could not be proven beyond a reasonable doubt," we should proceed to the second step of *Lewis*'s harmless error test. According to Aguilar, *Lewis* requires us to vacate his sentence and remand the matter for resentencing "because the record does not clearly indicate that the trial court would have imposed the upper term rather than the presumptive middle term if it had recognized its restricted discretion under the amended law . . . ." (Boldface & capitalization omitted.)

For the reasons set forth in Discussion, part C, *post*, we reject Aguilar's claim that the trial court's imposition of the upper term was based on the lack of provocation as an aggravating factor. Rather, the sentence rested on a single

---

[5] By describing this contention, we take no position on whether, if we had decided to remand the matter to the trial court, the parties would have been allowed to proffer evidence not admitted in the underlying trial to support their respective resentencing positions.

11

aggravating factor—the victim's substantial, permanent, and ongoing injuries.

Regarding whether any noncompliance with Senate Bill No. 567 prejudiced Aguilar, we note preliminarily that the parties dispute which harmless error test governs this case. As we previously noted, Aguilar asks us to employ *Lewis*'s two-part test. The Attorney General argues in favor of the harmless error standard from *People v. Flores* (2022) 75 Cal.App.5th 495. *Flores* held that " '[i]f a reviewing court concludes, beyond a reasonable doubt, that the [factfinder], applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the [factfinder],' the error [in failing to adhere to Senate Bill No. 567's new sentencing procedures] is harmless." (See *Flores*, at pp. 500–501.) Because the *Flores* approach calls for affirmance regardless of "whether the record *clearly indicates* that the trial court would have imposed the same sentence under the new law" (see *Lewis*, *supra*, 88 Cal.App.5th at p. 1138, review granted; *Flores*, at pp. 500–501), presumably it is less favorable to Aguilar than *Lewis*'s formulation of harmless error. Other Courts of Appeal have identified yet other tests for assessing whether a violation of newly-amended section 1170, subdivision (b) is harmless. (See *Lewis*, at pp. 1131–1136, review granted [cataloging these differing approaches.])

As set forth below, even under the test Aguilar prefers—*Lewis*—we conclude Aguilar did not suffer prejudicial error. We also conclude, beyond a reasonable doubt, that if the trial court had been aware of Senate Bill No. 567's new procedures, it "unquestionably" would have found true beyond a reasonable doubt at least one aggravating circumstance—that A.A.'s injuries

12

were substantial, permanent, and ongoing.  Therefore, the trial court's imposition of the upper term was harmless under respondent's preferred *Flores* standard as well.  Because we would affirm under either test, we need not opine on which test is correct, an issue that is pending before our high court in *Lewis*. (See fn. 3, *ante*.)

## C.   The Record Does Not Support Aguilar's Assertion that the Trial Court Relied on Lack of Provocation as an Aggravating Factor In Imposing the Upper Term

At no point during the sentencing hearing did the trial court state that lack of provocation for Aguilar's assault constituted an aggravating factor.  Rather, the trial court stated:

> "In this case the court's considered the California Rules of Court 4.421; circumstances and aggravation [*sic*] and circumstances in mitigation. Based on the evidence that the court heard I believe that based on the evidence that this was an unprovoked attack.  There was no evidence to support any other theory that was presented.  The victim's injuries were substantial, and he was essentially gutted for lack of a better term.

> "One of the reasons the defendant was acquitted of attempted murder is because the court found based on the state of the evidence that he didn't have that specific intent to kill, but it does not minimize the nature of the injuries suffered by the victim.  These are permanent and ongoing injuries to the victim, and circumstances of mitigation are defendant has a minimal prior record, if any.

"Court will impose a sentence as follows: As to count 2, probation is denied. The court is going to select the high terms [*sic*] of four years as the court finds the circumstances in aggravation outweigh those in mitigation."

Because the trial court did not identify lack of provocation as an aggravating factor, it appears that the court referenced lack of provocation to explain why particular mitigating factors were not applicable. Specifically, California Rules of Court, rules 4.423(a)(2) and 4.423(a)(3) identify the following *mitigating* factors: "The victim was an initiator of, willing participant in, or aggressor or provoker of the incident;" and "[t]he crime was committed because of an unusual circumstance, such as great provocation, that is unlikely to recur." (See Cal. Rules of Court, rule 4.423(a)(2) & (a)(3).) Given that Aguilar's trial counsel asserted in his opening statement that J.A. and A.A. had called Aguilar names prior to the attack, it is unsurprising that the trial court deemed it necessary to explain why otherwise potentially applicable mitigating factors identified in rules 4.423(a)(2) and 4.423(a)(3) were inapplicable in sentencing Aguilar. This contrasts with the trial court's finding that A.A.'s injuries were substantial, permanent, and ongoing, which is an aggravating factor provided in California Rules of Court, rule 4.421(a)(1).[6]

---

[6] California Rules of Court, rule 4.421(a)(1) identifies the following as a circumstance in aggravation: "The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness." (Cal. Rules of Court, rule 4.421(a)(1).) Although Aguilar argues A.A.'s "injuries were already factored into [Aguilar's] punishment" vis-à-vis the three-year enhancement for great bodily injury, he acknowledges that A.A.'s injuries may

14

California Rule of Court, rule 4.421's list of aggravating factors does not identify lack of provocation as one such circumstance. (See Cal. Rules of Court, rule 4.421.) Indeed, Aguilar admits this is a "factor[ ] not set out in the rules . . . ." Aguilar's assertion that the trial court "recite[d] the two circumstances in aggravation" does not give full import to the context of the court's statements quoted above. Instead, he asks us to interpret the court's statements as relying on an unenumerated aggravating factor in addition to the serious and permanent nature of the victim's injuries.[7] As we have explained, we disagree. The trial court merely was explaining

---

constitute a circumstance in aggravation to "the extent [they] exceed" the degree of injury required for imposition of that enhancement. (See also Cal. Rules of Court, rule 4.420(g) ["[A] fact charged and found as an enhancement may be used as a reason for imposing a particular term only if the court has discretion to strike the punishment for the enhancement and does so."]; 3 Witkin, Cal. Crim. Law (4th ed. 2012) Punishment, § 354 ["The significant or substantial physical injury standard of P.C. 12022.7 [(i.e., the great bodily injury enhancement statute)] does not require that the victim suffer permanent, prolonged, or protracted disfigurement, impairment, or loss of bodily function."].)

[7] We acknowledge that California Rules of Court, rule 4.421(c) permits trial courts to rely upon aggravating factors that are not enumerated expressly in that rule. (See Cal. Rules of Court, rule 4.421 & rule 4.421(c) ["Circumstances in aggravation include factors relating to the crime and factors relating to the defendant. [¶] . . . [¶] Any other factors statutorily declared to be circumstances in aggravation or that reasonably relate to the defendant or the circumstances under which the crime was committed."].)

15

why certain otherwise potentially applicable mitigating factors expressly identified in the California Rules of Court are not implicated by this case.

Lastly, in respondent's brief, the Attorney General states, "In imposing an upper term sentence in this case, the trial court properly relied upon the evidence establishing the aggravating factor of unprovoked attack." Insofar as the Attorney General believes the trial court found lack of provocation was an aggravating factor supporting the upper term sentence, we disagree and are not bound by the Attorney General's description of the trial court's ruling. (See *People v. Kim* (2011) 193 Cal.App.4th 836, 847 ["We are not required to accept the Attorney General's concession . . . ."].)

Accordingly, we reject Aguilar's assertion that the trial court found lack of provocation was an aggravating circumstance that supported the upper term sentence for Aguilar's assault conviction.

**D.** **We Affirm Aguilar's Sentence Because the Trial Court Would Have Found Beyond a Reasonable Doubt That A.A.'s Injuries Were Substantial, Permanent, and Ongoing, and There Is No Dispute That This Aggravating Circumstance Is a Sufficient Ground for Imposing the Upper-Term Sentence**

Aguilar acknowledges there "may have been sufficient proof to satisfy the beyond a reasonable doubt standard" as to the trial court's finding that A.A.'s "injuries were 'substantial' and 'permanent and ongoing[.]' " He acknowledges that "there was evidence in the form of testimony and medical record[s] indicating that [A.A.]'s injuries from the knife were extensive." Aguilar also states that A.A.'s "injuries were very serious,

16

requiring surgery and some long term rehabilitation." Furthermore, A.A. provided testimony indicating he saw his "[g]uts come out" after Aguilar stabbed him, Aguilar had cut A.A.'s arteries and the nerves and tendons in A.A.'s arm, and more than two years after the altercation, A.A. continued to have nerve pain and difficulty moving his fingers. (See Factual Background, *ante*.)

Given Aguilar's own acknowledgments and the trial evidence, we conclude that if the trial court had been aware of Senate Bill No. 567's new restrictions on imposition of the upper term, the court would have found this aggravating factor true beyond a reasonable doubt. This satisfies part one of *Lewis*'s harmless error test. (See *Lewis*, *supra*, 88 Cal.App.5th at p. 1137, review granted ["[W]e must ask whether . . . . [the factfinder] would have found at least one aggravating circumstance true beyond a reasonable doubt."].)

The next step under *Lewis* is determining "whether the record *clearly indicates* that the trial court would have imposed the same sentence under the new law." (See *Lewis*, *supra*, 88 Cal.App.5th at pp. 1137–1138, review granted.) The answer to that question is yes. The trial court found true (1) one aggravating factor, that A.A.'s injuries were substantial, permanent, and ongoing, and (2) one mitigating factor, that Aguilar had a minimal prior record. (See Discussion, part C, *ante*.) As set forth earlier in this part, Senate Bill No. 567 would have allowed the trial court to rely upon that single aggravating factor in imposing the upper term. Nothing in newly revised section 1170, subdivision (b) affected the lesser burden of proof— more likely than not—applicable to the only mitigating factor the trial court considered, that is, Aguilar's minimal prior criminal

17

record; the parties do not contend otherwise.[8]  Because Senate Bill No. 567 had no impact on the validity of the factors in aggravation and in mitigation upon which the trial court imposed the upper term, "the record *clearly indicates*" the court would have imposed the upper term sentence under amended section 1170, subdivision (b).  (See *Lewis*, at p. 1138, review granted.)

Significantly, the parties do not dispute that under Senate Bill No. 567, a trial court may impose the upper term based on a single aggravating factor.  In respondent's brief, the Attorney General argues, "The fact that [Aguilar] gutted the victim, cutting an artery, causing his intestines to come out of his body, standing alone, supported the upper term."  In Aguilar's reply, he does not challenge this proposition; Aguilar instead argues that affirmance is inappropriate because "it cannot be said that the [sentencing] decision was based solely" on A.A.'s injuries.  We reiterate that we disagree with that contention.

---

[8]  On its face, newly added section 1170, subdivisions (b)(1) and (b)(2) require a finding of beyond a reasonable doubt only for aggravating circumstances.  (See § 1170, subds. (b)(1) & (b)(2).)  Mitigating circumstances would thus remain subject to the preponderance of evidence burden of proof.  (See *Hicks, supra,* 17 Cal.App.5th at p. 512 [indicating that prior to Senate Bill No. 567, " ' "[t]he circumstances utilized by the trial court to support its sentencing choice need only be established by a preponderance of the evidence" ' "]; see also *People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1305, fn. 28 [noting that "the preponderance standard" is synonymous with " 'more likely than not' "].)  For that reason, we also conclude that Senate Bill No. 567 did not invalidate the trial court's determination that lack of provocation was not a mitigating factor in this case.

18

We further note *Lewis* indicates that "a defendant *could* still lawfully be sentenced to an upper term under federal and state law" if the factfinder "would have found *at least one* aggravating circumstance true beyond a reasonable doubt." (See *Lewis*, *supra*, 88 Cal.App.5th at p. 1137, review granted, second set of italics added.) Although newly-added section 1170, subdivision (b)(2) provides that "[t]he court may impose a sentence exceeding the middle term only when there are *circumstances* in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term" (see § 1170, subd. (b)(2), italics added), section 7 "provides that when construing words and phrases throughout the Penal Code, 'the singular number includes the plural, and the plural the singular. . . .' [Citation.]"[9] Therefore, the text of Senate Bill No. 567 does not necessarily require the jury or trial court to find more than one aggravating circumstance true beyond a reasonable doubt before the upper term may be imposed. Indeed, our high court held that under a prior version of section 1170, subdivision (b), "a single factor in aggravation suffice[d] to support an upper term," even though the statutory text required imposition of the middle term " 'unless there are *circumstances* in aggravation or mitigation of the crime[.]' " (See *People v. Osband* (1996) 13 Cal.4th 622, 729–730, quoting Stats. 1984, ch. 1432, § 9, p. 5028, italics added.)

Aguilar notes in passing that in a "concurring [s]tatement" accompanying the high court's denial of a request for publication

---

[9] (See *People v. Watson* (2021) 64 Cal.App.5th 474, 485, quoting § 7; *Watson*, at p. 485 [" 'The rule of construction enunciated in [Penal Code] section 7 is no mere rubric—it is the law.' "].)

19

of a Court of Appeal decision, Justice Liu stated:  "As a result of [Senate Bill No. 567's amendments to section 1170, subdivision (b)], it may no longer be true that 'the existence of a single aggravating circumstance is legally sufficient to make the defendant eligible for the upper term.'  [Citation.]"  (See *People v. Flores* (June 15, 2022, S274232), conc. stmt. of Liu, J.)  Aguilar appears to cite Justice Liu's concurring statement to support his claim that "[n]othing in this record clearly indicates that the trial court, recognizing its restricted discretion, would have imposed the upper term."  Aguilar does not argue that Justice Liu was opining that a trial court must find more than one aggravating factor to impose an upper term sentence.[10]

In sum, we conclude that the trial court's noncompliance with Senate Bill No. 567's new sentencing procedures was harmless.  We thus affirm Aguilar's sentence.

---

[10]  Justice Liu made the statement Aguilar cites in the course of explaining that newly-amended section 1170, subdivision (b)(2) "appears [to provide that] a defendant is subject to an upper term sentence only if the aggravating circumstances are sufficient to '*justify* the imposition' of that term under all of the circumstances, which may include evidence both in aggravation and in mitigation."  (See *People v. Flores*, *supra*, S274232, conc. stmt. of Liu, J, italics added.)  It thus seems Justice Liu was merely observing that Senate Bill No. 567's amendments bar a trial court from imposing the upper term sentence unless the aggravating circumstances, when balanced against any mitigating factors, warrant the longer term.

## DISPOSITION

The judgment is affirmed.
NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

CHANEY, J.